UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


MARQUES DUANE SMITH

VERSUS                                              CIVIL ACTION

JIMMY SHIVERS, ET AL                               NUMBER 06-946-JJB-DLD

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have ten days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within ten days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, February ___5___, 2009.


_____
DOCIA L. DALBY
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


MARQUES DUANE SMITH

VERSUS                                              CIVIL ACTION

JIMMY SHIVERS, ET AL                                NUMBER 06-946-JJB-DLD


MAGISTRATE JUDGE'S REPORT

Before the court is the application of petitioner Marques Duane Smith for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**Factual Background**

While a student at Louisiana State University, the plaintiff forged two grade correction forms.  The forgeries were discovered and a standard letter from interim Dean of Students Dr. John Baker was sent to the petitioner notifying him of impending disciplinary action.  On January 24, 2000, while armed with a kitchen knife, the petitioner went to Dr. Baker's home, identified himself as an FBI agent and ordered Dr. Baker out of his vehicle.  Petitioner and Dr. Baker struggled and Dr. Baker's throat was cut.  A neighbor tackled the petitioner and held him until police arrived.

**Procedural History**

Petitioner was found guilty of one count attempted second degree murder  and one count attempted false personation of a peace officer in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, Louisiana on March 9, 2001.  Petitioner was sentenced to a 10 year term of imprisonment at hard labor without benefit of probation,

parole, or suspension of sentence on the attempted second degree murder conviction and to a one year term of imprisonment at hard labor on the attempted false personation of a peace officer conviction, the sentences to run concurrently.[1]

The Louisiana First Circuit Court of Appeal affirmed the convictions and sentences. *State of Louisiana v. Marques Duane Smith*, 2001-2637 (La. App. 1st Cir. 6/21/02) (unpublished opinion).  Petitioner's application for supervisory review was denied by the Louisiana Supreme Court.  *State of Louisiana v. Marques Duane Smith,* 2002-2042 (La. 2/7/03), 836 So.2d 97.

Petitioner filed an application for post-conviction relief in the state district court on February 5, 2004.  Petitioner raised the following grounds for relief: (1)  insufficient evidence to support the conviction; (2) introduction of other crimes evidence; and, (3) ineffective assistance of counsel.

The state district court denied the petitioner's application for post-conviction relief on January 24, 2005. Petitioner sought supervisory review by the Louisiana First Circuit Court of Appeal.  The appellate court denied review.     *State of Louisiana v. Marques Duane Smith*, 2005-1559 (La. App. 1st Cir. 11/15/05).  Petitioner sought review by the Louisiana Supreme Court.  The Louisiana State Supreme Court denied review.*State ex rel. Marques Duane Smith v. State of Louisiana*, 2005-2550 (La. 9/15/06), 936 So.2d 1254.

On December 13, 2006, the petitioner filed his federal habeas corpus application asserting the following grounds for relief: (1) there was insufficient evidence to support his

---

[1]  Petitioner was also convicted of two counts forgery and was sentenced to a four year term of imprisonment on each count, the sentences to be served concurrently. Petitioner did not challenge his forgery convictions and sentences.

2

attempted false personation of a peace officer and attempted second degree murder

convictions; (2) he was denied due process as a result of the introduction of other crimes

evidence; and, (3) he received ineffective assistance of counsel.

Petitioner has exhausted state court remedies.  No evidentiary hearing is required.

### Applicable Law

Section 2254(d) provides as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(e)(1) provides as follows:

> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Subsection (d)(2) of section 2254 applies to a state court's factual determination.

It bars federal court relief unless the state court adjudication of the claim "resulted in a

decision that was based on an unreasonable determination of the facts in light of the

evidence."  Subsection (d)(1) provides the standard of review for questions of law and

mixed questions of law and fact.  *Drinkard v. Johnson* 97 F.3d 751, 767-68 (5th Cir. 1996),

*cert. denied*, 520 U.S. 1107, 117 S.Ct. 1114 (1997).

The second clause of subsection (d)(1) refers to mixed questions of law and fact

because it speaks of an "unreasonable application of ... clearly established Federal law."
When the issue before the court is a mixed question of law and fact, the court may grant
relief only if it determines that the state court decision rested on "an unreasonable
application of ... clearly established Federal law, as determined by the Supreme Court," to
the facts of the case.  The first clause of subsection (d)(1) refers to questions of law.
When the issue raised involves a purely legal question, the court may grant relief only if it
determines that a state court's decision rested on a legal determination that was "contrary
to...clearly established Federal law, as determined by the Supreme Court."  *Id.*

## Convictions Based Upon Insufficient Evidence

Petitioner argued that there was insufficient evidence to support his attempted false
personation of a peace officer and attempted second degree murder convictions.

### 1. Attempted False Personation of a Peace Officer

Insofar as the petitioner challenged his attempted false personation of a peace
officer conviction on the grounds that there was insufficient evidence to support the
conviction, this court does not have subject matter jurisdiction to entertain his § 2254
application.

Section 2254 affords relief to a habeas petitioner in custody pursuant to the
judgment of a state court.  *Dickerson v. Louisiana*, 816 F.2d 220, 224 (5th Cir.), *cert.
denied*, 484 U.S. 956, 108 S.Ct. 352 (1987).  A petitioner whose sentence has expired is
no longer in custody for purposes of that conviction. *Pleasant v. State of Texas*, 134 F.3d
1256 (5th Cir. 1998); 28 U.S.C. § 2254.

Petitioner's one year sentence related to his attempted false personation of a peace

4

officer conviction expired long before he filed his federal habeas corpus application.

### 2. Attempted Second Degree Murder

Petitioner challenged his attempted second degree murder conviction on the grounds that there was insufficient evidence to support the conviction.

The standard for gauging the sufficiency of the evidence to support a conviction is well established.  "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979) (emphasis in original).  Even if state law would impose a more demanding standard of proof, only the *Jackson* standard must be satisfied to maintain the constitutionality of a conviction. *Gilley v. Collins*, 968 F.2d 465 (5th Cir. 1992); *Schrader v. Whitley*, 904 F. 2d 282, 284 (5th Cir.), *cert. denied*, 498 U.S. 903, 111 S.Ct. 265 (1990).  The evidence may be found sufficient to support a conviction even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence.  *Gilley*, *supra*; *Gibson v. Collins*, 497 F.2d 780, 783 (5th Cir. 1991). The *Jackson* standard applies to both bench and jury trials. *Jackson*, 433 U.S. at 309, 311 and n. 3, 317 n. 8, 99 S.Ct. at 2783, 2785 and n. 3, 2788 and n. 8.

The Court of Appeal made the following factual findings:

> The evidence presented showed that defendant armed himself with a knife having an eight-inch blade (obtained without permission from another person's home) before driving to an area near the victim's home.  Defendant stated that at the end of his jog he realized that he was near the dean's home, but also admitted that he obtained the dean's address by looking in the student directory.   The evidence also showed that the dean was responsible for disciplinary issues, had sent defendant a letter about a disciplinary problem and that the matter would affect defendant's future as

an LSU student.  Additionally, the pictures reveal the seriousness of the victim's neck wound, a cut from the front of his neck to below his ear.  Thus, we believe that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have concluded that the state proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that defendant had the specific intent to kill the victim.

*State of Louisiana v. Marques Duane Smith*, 2001-2637 (La. App. 1st Cir. 6/21/02) at 13.

Petitioner has not carried his burden to rebut the presumption of the correctness of these factual findings by clear and convincing evidence, as he is required to do by section 2254(e)(1).

The substantive elements which the state must prove in order to convict a defendant are determined by state law.  At the time of the petitioner's offense, second degree murder included "the killing of a human being when the offender has a specific intent to kill or inflict great bodily harm."  LSA-R.S. 14:30.1A(1).

Attempt is defined as "any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended."  LSA-R.S.14:27A.

John Baker testified that on January 24, 2000, while backing his car out of his driveway, the petitioner identified himself as the FBI and ordered Baker to stop the car.[2] Baker testified that he stopped the car, turned off the ignition and opened the car door.[3] When Baker  observed the unfamiliar male dressed in a jogging suit standing next to his

---

[2]  Trial Transcript, Vol. 4, March 7, 2001, pp. 77-78.

[3]  *Id*. at 78.

car he attempted to close the car door.[4]  Baker testified that the petitioner stepped between the door and the car preventing Baker from closing the car door.[5]  Baker testified that the petitioner addressed him by name and ordered him to put his keys down.[6]  Baker testified that he stepped out of his car and observed the petitioner with a knife pointed upwards.[7]  Baker testified that the petitioner once again stated he was with the FBI and that he had some questions for Baker.[8]  Baker testified that he struck the petitioner in the face.[9]  Baker testified that as the petitioner cut his throat with the knife, he grabbed the petitioner's arms and the two fell to the ground.[10]  Baker testified that during the struggle he was able to get the petitioner in a scissors lock and then hollered for help.[11]  Baker testified that he released the petitioner who disappeared down the driveway.[12]

Kathy Baker testified that on January 24, 2000, she heard her husband's voice and knew something was wrong.[13]  Kathy Baker testified that she exited her home and

---

[4]   *Id.*

[5]   *Id.*

[6]   *Id.* at 79.

[7]   *Id.* at 79-80.

[8]   *Id.* at 81.

[9]   *Id.*

[10]   *Id.* at 83; 94.

[11] Trial Transcript, Vol. 5, at 91.

[12]  *Id.*

[13]   *Id.* at 137.

observed her husband wrestling with a black man.[14]  Kathy Baker testified that she ran

back inside, locked the door, and screamed to her mother to call 911 saying that someone

was trying to kill her husband.[15]  Kathy Baker testified that she ran across the street to a

neighbor's house, advised the neighbors that her husband was in trouble and asked the

neighbor to assist her husband.[16]  Kathy Baker testified that she ran back home and found

her husband coming through the back door.[17]  Kathy Baker testified that her husband went

into the master bedroom and retrieved a gun and went outside.[18]  Kathy Baker testified that

a neighbor asked her husband to hand him the gun and her husband complied.[19]

Paramedics arrived and transported her husband to the hospital.[20]

John Bajon testified that on January 24, 2000, Kathy Baker came to his home

screaming that her husband was being attacked.[21]  Bajon testified that he ran across the

street and observed Baker and the petitioner struggling with each other.[22]  Bajon testified

---

[14]  *Id*. at 138.

[15]  *Id*.

[16]  *Id*.

[17]  *Id*.

[18]  *Id*. at 139-140.

[19]  *Id*.

[20]  *Id*.

[21]  *Id*. at 144.

[22]  *Id*.

that he told the petitioner to "come get a piece of me."[23]  Bajon testified that he and the petitioner began fighting.[24]  Bajon testified that held the petitioner until the police arrived.[25]

Corporal Anthony Parrino testified that he was the first officer on the scene of the incident and he took custody of the petitioner.[26]  Corporal Parrino testified that he took the petitioner back to the precinct where he was questioned.[27]  Corporal Parrino testified that the petitioner told him that he identified himself as an FBI agent to the victim and told the victim he wanted him to get out of the car.[28]  Corporal Parrino testified that the petitioner stated that Baker exited the car and began swinging his keys at the petitioner.[29]  Corporal Parrino testified that the petitioner stated that he produced a knife to defend himself.[30]

Marques Smith testified that on the morning of the incident he armed himself with a knife for protection while jogging.[31]  Smith testified that he was jogging in the victim's neighborhood and decided to contact him at his house.[32]  Smith testified that he heard a

---

[23]   *Id.* at 145.

[24]   *Id.*

[25]   *Id.* at 147.

[26]   *Id.* at 158.

[27]   *Id.*

[28]   *Id.* at 161.

[29]   *Id.* at 163.

[30]   *Id.*

[31]   Trial Transcript, Vol. 5, March 8, 2001, at 141.

[32]   *Id.* at 143.

car start in the victim's driveway and hurried up the driveway.[33] Smith waved his hands and then placed his hands on the driver's door near the windshield.[34] Smith testified that the victim stopped the car, opened the car door, pushed the petitioner out of the way and exited the car.[35] Smith testified that the victim asked him if he was the FBI or something and that he responded that he was with the FBI.[36] Smith testified that the victim said he did not want to talk to him and then punched the petitioner's face.[37] Smith testified that the victim came after him, he attempted to push him off, and the two rolled around on the ground.[38] Smith testified that the victim got on top of him and while holding him in a scissor lock, repeatedly punched him.[39] Smith testified that after the victim punched him in the arm with a knife he pulled out his knife.[40] Smith testified that he is not exactly sure how the victim's neck was cut.[41] Smith testified that when he heard another person coming up the driveway he managed to get the victim off of him and attempted to run down the

---

[33]    Trial Transcript, Vol. 6, March 8, 2001, at 146.

[34]    *Id*. at 147.

[35]    *Id*.

[36]    *Id.* at 148.

[37]    *Id*. at 149.

[38]    *Id*. at 150.

[39]    *Id*. at 150, 151.

[40]    *Id*.

[41]    *Id*.

driveway.[42] Smith testified that he was tackled by another man who sat on top of him until the police arrived.[43]

The evidence introduced at trial was sufficient to support the petitioner's attempted second degree murder conviction. The *Jackson* standard requires only that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Gilley, supra.* That standard was met in this case.

Petitioner has not shown that the state courts' adjudication of his insufficiency of the evidence claim satisfies either of the criteria of § 2254(d). Petitioner's insufficiency of the evidence claim has no merit.

## Other Crimes Evidence

Petitioner argued that other crimes evidence was improperly admitted by the trial court. Specifically, the petitioner argued that other crimes evidence was introduced in contravention of LSA-C.E. art. 404B.

A federal habeas court grants relief when the petitioner is held "in custody pursuant to the judgment of a State court only on the ground that he is in custody *in violation of the Constitution* or laws or treaties of the United States." 28 U.S.C. § 2254(a)(emphasis added). A federal habeas court asks only whether a constitutional violation infected the trial. *Pemberton v. Collins*, 996 F.2d 789 (5th Cir. 1993). *See also, Herrera v. Collins*, 506 U.S. 390, 113 S.Ct. 853, 859 (1993). An error in the application of state law by the trial court does not provide grounds for habeas relief. *Engle v. Isaac*, 456 U.S. 107, 119, 102

---

[42] *Id.* at 151.

[43] *Id.* at 152.

S.Ct. 1558, 1567 (1982)("Insofar as respondents simply challenge the correctness of the self-defense instructions under [state] law, they allege no deprivation of federal rights and may not obtain habeas relief.")

Federal habeas review of the admission of evidence is limited to whether the state court's evidentiary ruling was sufficiently egregious to render the trial fundamentally unfair or to violate an explicit constitutional right. *Peters v. Whitley*, 942 F.2d 937 (5th Cir. 1991); *Edwards v. Butler*, 882 F.2d 160, 164 (5th Cir. 1989). The challenged evidence must be "a crucial, critical, or highly significant factor in the context of the entire trial." *Thomas v. Lynaugh*, 812 F.2d 225, 230 (5th Cir.), *cert. denied*, 484 U.S. 842, 108 S.Ct. 132 (1987).

In the first component of his other crimes evidence claim, the petitioner argued that the prosecutor elicited testimony from Nataki Faulk regarding the theft of a knife from the witness' residence which was used to cut the victim's throat. Petitioner argued that the testimony constituted other crimes evidence which was so prejudicial that it rendered his trial fundamentally unfair.

The challenged evidence was neither crucial, critical, or a highly significant factor in the context of the petitioner's trial. While evidence of the theft of the knife may have prejudiced the petitioner's defense by creating adverse inferences about his character, within the context of the entire trial its admission was harmless considering the substantial evidence of the petitioner's guilt. Any prejudicial effect of the other crimes evidence was not a substantial or crucial factor in the determination of the petitioner's guilt of charges of attempted second degree murder.

In the second component of his other crimes evidence claim, the petitioner argued

12

that the prosecutor elicited testimony from Annette Freeman regarding the petitioner's assertion that he had been working with the New Orleans Police Department.

Freeman's testimony did not constitute other crimes evidence.

**Ineffective Assistance of Counsel**

Petitioner argued that he received ineffective assistance of counsel. Specifically, the petitioner argued that counsel rendered ineffective assistance of counsel when he: (1) failed to object to an erroneous jury instruction; and (2) failed to object to the prosecution's reference to the erroneous standard during closing argument.

To obtain habeas relief based upon a claim of ineffective assistance of counsel, the petitioner must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984). To prove deficient performance the petitioner must demonstrate that counsel's actions "fell below an objective standard of reasonableness." *Id.*, at 688, 104 S.Ct. at 2064. To prove prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.*, at 694, 104 S.Ct. at 2068, and that "counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844 (1983). The Sixth Amendment guarantee of effective assistance of counsel does not entitle the accused to error-free representation. *Hayes v. Maggio*, 699 F.2d 198 (5th Cir. 1983).

In the first component of the petitioner's ineffective assistance of counsel claim, the petitioner argued that counsel was ineffective when he failed to contemporaneously object

13

to the trial court's erroneous jury instruction on the standard of law used in determining justification of the use of force in a non-homicide case.  Specifically, the petitioner argued that had the jury been charged with the correct standard on self-defense in a non-homicide case, there is a reasonable probability that the verdict would have been different.

The trial court gave the following instruction to the jury regarding justification:

A homicide or attempted homicide is justifiable if committed in self defense by one who reasonably believes he is in imminent danger of losing his life or receiving great bodily harm, and that the killing is necessary to save himself from that danger.  The danger need to not have been real so long as the defendant reasonably believed he was in actual danger.  The burden of using force or violence as justified in non-homicide cases is on the defendant.  Defense must meet its burden by a preponderance of the evidence, rather than beyond a reasonable doubt.  Some factors that you should consider in determining whether the defendant had reasonable belief that the killing or attempted killing was necessary are, one, the possibility of avoiding the necessity of the taking of human life by retreat, two, the excitement and confusion of the occasion, three, the possibility of preventing the danger to himself by using force less than killing or attempted killing, and, four, the defendant's knowledge of his assailant's dangerous character. Thus, if you find, one, that the defendant killed or attempted to kill in self defense, and, two, that the defendant believed that he was in danger of losing his life or receiving great bodily, and, three, that the defendant believed that the killing was necessary to save himself from danger, and, four, that the defendant's beliefs were reasonable in light of the circumstances, then you must find the defendant not guilty.

*State of Louisiana v. Marques Smith*, No. 02-00-30, Charge to the Court, Trial Transcript Supplemental Volume, pp.8-9 ( March 9, 2001).

The correct standard on self-defense in non-homicide cases is found in LSA-R.S. 14:19:

A. The use of force or violence upon the person of another is justifiable when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person's lawful possession, provided that the force or violence used must be reasonable and apparently necessary to prevent such offense, and that this Section shall not

14

apply where the force or violence results in a homicide.

LSA-R.S. 14:19.

During the jury charge conference counsel for the defendant objected to the burden-shifting requirements of the jury instruction.[44]   Contrary to the petitioner's assertion, counsel for the defendant also objected to the wording of the jury instruction and its application to this non-homicide case.[45]  Moreover, defense counsel specifically argued that he made a strategic decision to not assert self-defense as an affirmative defense.[46] The court rejected counsel's argument.[47] The first component of the petitioner's ineffective assistance of counsel claim is without merit.

Even assuming that counsel's failure to specifically object to the jury instruction insofar as it contained an erroneous standard of law used in determining justification of the use of force in a non-homicide case, the error did not have a substantial and injurious effect or influence in determining the jury's verdict.

A deficient jury charge is not grounds for federal habeas relief unless the instruction was, in and of itself, violative of a constitutional right. *Estelle v. McGuire*, 502 U.S. 62, 71-72, 112 S.Ct. 475 (1991).  The question in such a collateral proceeding is not whether 'the instruction is undesirable, erroneous, or even 'universally condemned.'" *Cupp v. Naughten*, 414 U.S. 141, 146, 94 S.Ct. 396 (1973).  Rather, the question is "whether the ailing

---

[44] Trial Transcript, Vol. 6, pp. 98-103.

[45] *Id.* at 99, 101-02.

[46] *Id.* at 99.

[47] *Id.* at 100.

15

instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 147, 94 S.Ct. 396.

In this case, the erroneous jury instruction concerned self-defense. Because the existence of self-defense merely presents exculpatory circumstances which defeat culpability without negating the state's proof beyond a reasonable doubt of all the essential elements of the offense, *State v. Richardson*, 648 So.2d 945 (La. App. 5 Cir. 1994), the erroneous jury instruction is not a structural error and as such is properly analyzed under the harmless error standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710 (1993).

An error requires habeas relief only if it "'had [a] substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht*, 113 S.Ct. at 1722 (quoting *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239 (1946)). The error must be "substantial," and there must be something more than a "mere reasonable possibility" that the error contributed to the verdict. *Woods v. Johnson*, 75 F.3d 1017, 1026-27 (5th Cir. 1996).

Even if counsel's performance were deficient, it is extremely unlikely the jury verdict would have been affected by it. The evidence of the petitioner's intent to kill or cause great bodily harm to Baker was overwhelming. Petitioner obtained Baker's address in the student-faculty directory, armed himself with a knife, approached Baker in his driveway, identified himself as an FBI agent, demanded that Baker exit his vehicle, prevented Baker from retreating inside his vehicle, and slashed Baker's throat with the knife. It is very doubtful that the jury misunderstood the burden of proof as to each element of the crime of attempted second degree murder. In addition, the defense's main theme rested

primarily not on self-defense, but on the petitioner's lack of specific intent to kill or cause great bodily harm.  The jury almost certainly rejected the defense theory.

It is clear that the error in the instructions did not have a substantial effect or influence in determining the verdict and that there was not more than a reasonable possibility that the result would have been different had the jury been properly instructed. Thus, the erroneous jury instruction on justification was harmless under *Brecht.*

Under *Strickland,* the allegedly deficient performance of counsel at trial produced no harm to the petitioner's cause.  There is no basis upon which to conclude that there is a reasonable probability that, but for counsel's failure to object to the erroneous jury instruction, the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.  As set forth in the sufficiency of the evidence ground for relief, there was no lack of evidence to support the attempted  second degree murder conviction. This component of the petitioner's ineffective assistance of counsel claim is without merit.

In the second component of the petitioner's ineffective assistance of counsel claim, the petitioner argued that counsel should have objected to prosecutorial comments during closing argument referencing the erroneous jury instruction.

When a habeas petitioner alleges a generic due process violation due to improper prosecutorial comments, a reviewing court must determine whether the remarks, "in the context of the entire trial, were sufficiently prejudicial to violate [the defendant's] due process rights*." Donnelly v. DeChristoforo*, 416 U.S. 637, 639, 94 S.Ct. 1868, 1869 (1974). It is not enough that the remarks were "undesirable or even universally condemned," *Darden v. Wainwright*, 699 F.2d 1031, 1036 (11th Cir. 1983), *affirmed, Darden v.*

*Wainwright*, 477 U.S. 168, 106 S.Ct. 2464 (1986); a petitioner may obtain relief only if "the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. at 180, 106 S.Ct. at 2471 (*quoting Donnelly*, 416 U.S. at 643, 94 S.Ct. at 1871). "The prosecutor's remarks do not present a claim of constitutional significance unless they were so prejudicial that [the petitioner's] state court trial was rendered fundamentally unfair within the meaning of the Fourteenth Amendment." *Rushing v. Butler*, 868 F.2d 800, 806 (5th Cir. 1989). A trial is fundamentally unfair only if the prosecutor's remarks evince either persistent or pronounced misconduct, or the evidence was so insubstantial that in all probability but for the remarks the petitioner would not have been convicted. *Id., citing Kirkpatrick v. Blackburn*, 777 F.2d 272, 281 (5th Cir. 1985); *Fulford v. Maggio*, 692 F.2d 354, 359 (5th Cir. 1982), *reversed on other grounds*, 462 U.S. 11, 103 S.Ct. 2261 (1983). When attacked, prosecutorial comments are not considered in isolation, but are evaluated in the context of the entire trial as a whole, including the prosecutor's entire closing argument. *Rushing,* at 806; *Kirkpatrick*, at 281.

A review of the record does not support the conclusion that "the evidence was so insubstantial that (in probability) but for the remarks no conviction would have occurred." *Id.* The First Circuit Court of Appeal found that the state's evidence was sufficient to establish the elements of the crime of attempted second degree murder. *Smith*, 2001-2637 at 11-14. Although the appellate court did not analyze the evidence in the context of a prosecutorial misconduct claim, its review refutes any argument that the evidence

18

against the petitioner was insubstantial.  An independent review of the evidence[48] supports the finding that there is no probability the petitioner would not have been convicted but for the prosecutor's remarks.

Because there is no basis upon which to conclude that there is a reasonable probability that, but for counsel's failure to object to the prosecutor's comments, the result of the proceeding would have been different,  *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068, this claim has no merit.

## RECOMMENDATION

It is the recommendation of the magistrate judge that the application of petitioner Marques Duane Smith for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied.

Baton Rouge, Louisiana, February _____5_____, 2009.

_____
DOCIA L. DALBY
UNITED STATES MAGISTRATE JUDGE

---

[48]  For a thorough review of the evidence presented at the petitioner's trial, see the discussion at the ground for relief discussing convictions based upon insufficient evidence.